[Civ. No. 1982. Fifth Dist. June 15, 1973.]

THE PEOPLE, Plaintiff and Appellant, v.
ROBERT LEE BRANNON, Defendant and Respondent.

**COUNSEL**

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, Charles P. Just and W. Scott Thorpe, Deputy Attorneys General, for Plaintiff and Appellant.

Franklin J. Mitchell, Jr., for Defendant and Respondent.

**OPINION**

**BROWN (G. A.), P. J.**—Robert Lee Brannon was convicted in the Municipal Court of the Fresno Judicial District of misdemeanor drunk driving in violation of Vehicle Code section 23102, subdivision (a). The trial judge granted defendant's motion for a new trial on the ground that the results of a breathalyzer test were improperly received in evidence. The People appealed to the appellate department of the superior court. That court reversed the order granting the new trial. This court accepted certification "to secure uniformity of decision or to settle important questions of law." (Cal. Rules of Court, rule 63 (a).)

The single issue for determination is whether the results of a breathalyzer test taken pursuant to but in violation of Vehicle Code section 13353[1] are admissible in evidence in a prosecution for misdemeanor drunk driving (Veh. Code, § 23102, subd. (a)),[2] the officer having inten-

---

[1]Vehicle Code section 13353, commonly referred to as the implied consent law, provides in pertinent part: "(a) Any person who drives a motor vehicle upon a highway shall be deemed to have given his consent to a chemical test of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of intoxicating liquor. The test shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe such person was driving a motor vehicle upon a highway while under the influence of intoxicating liquor. Such person shall be told that his failure to submit to or complete such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of six months.

"The person arrested shall have the choice of whether the test shall be of his blood, breath or urine, *and he shall be advised by the officer that he has such choice*." (Italics added.)

This section was first enacted in 1966. The underlying language requiring the officer to advise the person arrested that he has such a choice was added by Statutes 1969, chapter 1438, section 1.

[2]All references will be to the California Vehicle Code unless otherwise indicated.

tionally failed to advise the defendant of his right of choice among blood, breath or urine tests as required by section 13353.

The facts are stipulated. After defendant's arrest on December 17, 1971, by a California Highway Patrol officer for violation of section 23102, he was taken to the Fresno County Sheriff's office, where he was administered a chemical test for alcohol on a breathalyzer machine. Though the sheriff's deputies were aware of the provisions of section 13353, they intentionally failed to advise the defendant that he had a choice of whether the chemical test would be of his blood, breath or urine because they had been advised by an assistant district attorney of Fresno County during a training program for law enforcement officers that such advice was not required. The officers were instructed during this training program simply to place the suspected drunk driver before the breathalyzer machine and to tell him to blow into the mouthpiece, and this was the procedure followed in the instant case. At the trial, the results of the test were received into evidence over the timely objection of the defendant.

*Kesler* v. *Department of Motor Vehicles* (1969) 1 Cal.3d 74, at page 77 [81 Cal.Rptr. 348, 459 P.2d 900], explicates the purpose of Vehicle Code section 13353: "Our implied consent statute, including section 13353, was enacted to fulfill the need for a fair, efficient and accurate system of detection and prevention of drunken driving. [Citations.] The immediate purpose of section 13353 is to obtain the best evidence of blood alcohol content at the time of the arrest of a person reasonably believed to be driving while intoxicated. The long range purpose is, of course, to inhibit intoxicated persons from driving on the highways. [Citation.]" (See *Zidell* v. *Bright* (1968) 264 Cal.App.2d 867 [71 Cal.Rptr. 111].)

The relationship between section 13353 and prosecutions under section 23102 is rather obvious. ■ The test results under section 13353 may be and are used as evidence in prosecutions under section 23102, and the administrative remedy of six months' license suspension under section 13353 may be imposed notwithstanding a prosecution under section 23102. (*People* v. *Fite* (1968) 267 Cal.App.2d 685, 690-691 [73 Cal. Rptr. 666]; *People* v. *Hanggi* (1968) 265 Cal.App.2d Supp. 969, 974 [70 Cal.Rptr. 540].) It is also evident that as a matter of public policy it is desirable to obtain a sample for one of the tests in a noncoercive fashion, thereby substituting volition for compulsion. (*People* v. *Superior Court (Hawkins)* (1972) 6 Cal.3d 757, 764-765 [100 Cal.Rptr. 281, 493 P.2d 1145]; *Lampman* v. *Department of Motor Vehicles* (1972) 28 Cal.App.3d 922, 927 [105 Cal.Rptr. 101]; *People* v. *Fite, supra,* 267 Cal.App.2d 685, 690-691.)

The existence of the relationship between the two sections and the importance of the valid state interest in following a voluntary procedure, however, does not reach the fundamental pivotal issue because desirability as such cannot be equated with constitutionality. ■ The more apt question is whether the failure to expressly advise the defendant that he has a choice of tests, in violation of section 13353, is constitutionally intolerable, requiring the application of the exclusionary rule in a section 23102 prosecution. We have concluded that such a violation of section 13353 involves no violation of any constitutionally protected interest. It follows that absent an express statutory provision making the evidence obtained as a result of such statutory violation inadmissible, the evidence was properly admitted.

■ It is elemental that the illegality tainting evidence and rendering it inadmissible is illegality flowing from the violation of a defendant's constitutional rights—primarily those involving unlawful searches and seizures in violation of the Fourth Amendment to the United States Constitution and the essentially identical guarantee of personal privacy set forth in article I, section 19, of the California Constitution. (*Weeks* v. *United States* (1914) 232 U.S. 383 [58 L.Ed. 652, 34 S.Ct. 341]; *Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684]; *People* v. *Cahan* (1955) 44 Cal.2d 434 [282 P.2d 905, 50 A.L.R.2d 513].) Evidence obtained in violation of a statute is not inadmissible per se unless the statutory violation also has a constitutional dimension. For example, the knock and notice requirements of Penal Code sections 844 and 1531 are codifications of the common law (*People* v. *Rosales* (1968) 68 Cal.2d 299, 303-305 [66 Cal.Rptr. 1, 437 P.2d 489]) and the violation thereof renders any following search and seizure "unreasonable" within the meaning of the Fourth Amendment. (*Greven* v. *Superior Court* (1969) 71 Cal.2d 287, 290 [78 Cal.Rptr. 504, 455 P.2d 432].)

We fail to perceive, however, how the failure to advise a person of his choice of three tests under section 13353 violates any constitutionally protected right. ■ It is established that the government may utilize the results of chemical analyses performed upon a blood sample forcibly removed without his consent, provided it is done in a reasonable, medically approved manner as an incident to the defendant's arrest. (*Breithaupt* v. *Abram* (1957) 352 U.S. 432 [1 L.Ed.2d 448, 77 S.Ct. 408]; *Schmerber* v. *California* (1966) 384 U.S. 757, 766-772 [16 L.Ed.2d 908, 917-920, 86 S.Ct. 1826, 1833-1836]; *People* v. *Duroncelay* (1957) 48 Cal.2d 766, 771-772 [312 P.2d 690].)

It is also clear that the right to obtain and utilize such chemical analyses

under the authority of *Schmerber* and *Duroncelay* has not been eliminated by the enactment of section 13353 and the 1969 amendment thereto. (*People* v. *Superior Court* (*Hawkins*), *supra,* 6 Cal.3d 757, 761, 764-765; *Lampman* v. *Department of Motor Vehicles, supra,* 28 Cal.App.3d 922, 927; *People* v. *Kraft* (1970) 3 Cal.App.3d 890 [84 Cal.Rptr. 280]; *People* v. *Fite, supra,* 267 Cal.App.2d 685; *People* v. *Wren* (1969) 271 Cal. App.2d 788 [76 Cal.Rptr. 673].) In *People* v. *Fite, supra,* upon refusal of the defendant to submit to a blood alcohol test under section 13353, blood was withdrawn nonconsensually and a chemical test performed thereon. The court squarely held that the test was admissible and in doing so said: "We hold that Vehicle Code section 13353 complements rather than supersedes section 23101, and that the enactment of the implied consent law in no way affected the admissibility of blood alcohol tests under established case law. . . .

"Section 13353 has two separate objectives, namely: (1) to secure chemical tests for determining whether or not a person was intoxicated while driving a motor vehicle and to allow introduction of such evidence into court; and (2) to provide an administrative penalty for those drivers who refuse to comply. We think it is clear that the administrative penalty imposed upon a licensee who drives a motor vehicle while drunk upon the highways of this state is in addition to, and separate and apart from, the penalty imposed by said section 23101. Nowhere do we find any legislative indication that by the enactment of the implied consent law, the Legislature thereby intended to preclude the taking of blood samples as an incident to a lawful arrest over a person's refusal in the absence of force or violence." (267 Cal.App.2d at pp. 690-691.)

*People* v. *Superior Court* (*Hawkins*), *supra,* 6 Cal.3d at page 765, refers to section 13353 as providing "an additional or alternative method of compelling a person arrested for drunk driving to submit to a test for intoxication, . . ."

It would be inconsonant and inconsistent to hold that the method of obtaining a blood alcohol sample violates the strictures of constitutional guarantees simply because a defendant is not advised of a choice of three tests in the face of established law that a sample taken without consent in a medically approved manner does not violate any constitutional protections. We reject such an extravagant extension of the Constitution and decline to so hold.

■  Petitioner seeks to have interpreted into the statute a legislative intent that the results of a test when a defendant is not informed of his choices are inadmissible in evidence. Senate Bill 1065 as first proposed in

1969 amended sections 23101 and 23102 by making the results of chemical tests inadmissible in evidence unless the arresting officer advised the person that he had a choice. This language was stricken from the bill in its final form and in lieu thereof the language "and he shall be advised by the officer that he has such choice" was added to section 13353. In light of this legislative history demonstrating a refusal by the Legislature to make the evidence inadmissible, this court cannot add the same provision. To do so would not be interpreting the legislative intent but would be a gross example of judicial legislation in contravention of the legislative intent logically implied from the rejection by the Legislature of an identical provision. Respect for the doctrine of separation of powers and obedience to the established principles of judicial construction preclude us from so acting. (Code Civ. Proc., § 1858.) "This court has no power to rewrite the statute so as to make it conform to a *presumed* intention which is not expressed." (Italics added.) (*Seaboard Acceptance Corp.* v. *Shay* (1931) 214 Cal. 361, 365 [5 P.2d 882]; see also *People* v. *Knowles* (1950) 35 Cal.2d 175, 182-183 [217 P.2d 1].) The sweep of the statute should not be enlarged by insertion of language which the Legislature has overtly left out. (*Keeler* v. *Superior Court* (1970) 2 Cal.3d 619, 632 [87 Cal.Rptr. 481, 470 P.2d 617, 40 A.L.R.3d 420].) Accordingly, we decline to add to the statute that which the Legislature has intentionally omitted.

We approve of the result but not all of the reasoning in *People* v. *Hanggi, supra,* 265 Cal.App.2d Supp. 969, decided by the Appellate Department of the Superior Court of San Diego County, that case being consistent with the result herein. It, of course, was decided before the 1969 amendment to section 13353.

*People* v. *Foulger* (1972) 26 Cal.App.3d Supp. 1 [103 Cal.Rptr. 156], decided by the Appellate Department of the Superior Court of Los Angeles County, held that the results of a breathalyzer test taken pursuant to section 13353 were not admissible in evidence in a prosecution for violation of section 23102. The test in that case was not made in compliance with Health and Safety Code section 436.52, which requires the test to be performed in accordance with regulations adopted by the State Board of Health. The Health and Safety Code section contains no express provision requiring compliance as a condition of admissibility of the results of such a test in evidence.

Though not referred to in the opinion, the holding in the *Foulger* case may be rationalized on the basis that the admissibility of a blood alcohol test under the exclusionary rule is conditioned upon the test being taken

and performed in a medically approved fashion as part of the requirement of the Fourth Amendment. (*Schmerber* v. *California, supra,* 384 U.S. 757, 771-772 [16 L.Ed.2d 908, 920, 86 S.Ct. 1826, 1836]; *People* v. *Duroncelay, supra,* 48 Cal.2d 766, 770-772.) However, for the reasons heretofore stated, we disagree with *Foulger* insofar as it suggests or implies that absent an express provision of the statute excluding the evidence in criminal prosecutions and absent any constitutional violation of a defendant's rights the evidence may be excluded solely because it is proscribed by statute.

The result we reach should not be construed as approving or condoning intentional noncompliance by law enforcement officers with the provisions of section 13353. As we have pointed out, the statute was conceived and enacted for laudable public purposes and to serve valid state interests, including the avoidance of the use of force in obtaining samples for blood alcohol tests, to assist in obtaining the best evidence of driving while intoxicated, and to reduce the number of death-dealing drunk drivers on the highways by the administrative sanction of drivers' licenses suspensions. By following the policy enunciated, the law enforcement officers are depriving the state of the remedy of obtaining administrative suspension of drivers' licenses. Further, the other laudable objectives of the legislation are being defeated and frustrated by the practice.

The question, however, of whether it would be good public policy to require such evidence to be excluded in drunk driving cases is one for the Legislature and not the courts.

The order granting defendant a new trial is reversed.

Gargano, J., and Franson, J., concurred.