[Crim. No. 20726. First Dist., Div. Four. Feb. 3, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
PHILIP ALAN RYAN, Defendant and Appellant.

COUNSEL

Carl B. Shapiro and Shapiro & Shapiro for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney

General, William D. Stein and Stan M. Helfman, Deputy Attorneys General, for Plaintiff and Respondent.

## Opinion

CALDECOTT, P. J.—Philip Alan Ryan (appellant) was convicted following jury trial of felony drunk driving in violation of Vehicle Code[1] section 23101, subdivision (b) (count one); failure to stop at the scene of accident (hit and run driving causing injury) in violation of section 20001 (count two); and reckless driving in violation of section 23103 (count three).

Appellant had filed motions to set aside the information and to suppress evidence pursuant to Penal Code sections 995 and 1538.5, respectively. The motion to suppress evidence was granted and the motion to set aside the information was denied. After a sentencing hearing the court suspended imposition of sentence and placed appellant on supervised probation for the period of three years on condition that he make restitution to the victims, serve six months in county jail and enter a program of counselling or therapy.

On May 31, 1979, at approximately 8:30 p.m., Helen Gross was driving her car west on Sir Francis Drake Boulevard in Fairfax, Marin County. Her young daughter was in the car with her. In the car behind Helen Gross were Greg Duncan and Debra Sullivan. Traffic on Sir Francis Drake Boulevard was sparse and it was still light.

As Gross approached Pastori Street, she saw a dark blue foreign compact car making a left turn. Gross prepared to pass the car on the right; as she did so, instead of completing the turn, the car cut Gross off and proceeded ahead of her on Sir Francis Drake Boulevard. When the car was even with hers, she looked at the driver. She described him as about 40 years old, Caucasian, with dark facial hair. As a result of this episode, Gross focused her attention on the blue vehicle. Duncan had witnessed the event, and this brought the blue vehicle, a Datsun, to his attention as well.

---

[1]Unless otherwise indicated, all references will be made to the Vehicle Code.

A short distance up the road, Gross, Sullivan and Duncan saw a person kneeling or squatting next to a Corvette parked next to the curb; they saw the blue Datsun veer or curve toward the person. Gross and Sullivan saw the right front portion of the blue Datsun hit the person and throw him forward a substantial distance. Gross thought she heard the sound of the impact; the driver of the parked car, to whom the victim had been talking, saw and heard the impact. They saw the Datsun stop or pause, then maneuver around the body, and then take off at a high rate of speed. Gross stopped her car immediately and went to the scene to render aid to the victim, who was lying in the street and bleeding heavily from the head. Duncan and Sullivan pursued close behind the fleeing Datsun. There followed a high speed chase, with the Datsun going through stop signs and a red light. Approximately half a mile from the scene of the impact, Duncan and Sullivan caught up to and came alongside the Datsun; Duncan cut the Datsun off and forced it to stop. Sullivan yelled to the driver, "You just hit someone." At this, appellant, who acted as though he did not know what she was talking about but "looked like he did," made a U-turn and took off at a high speed in the opposite direction. Duncan continued to follow close behind. At one intersection, another car was stopped at the stop sign in front of the Datsun; Duncan drove his car next to the Datsun on the left to box it in, and another car stopped behind the Datsun. Finding himself boxed in, the driver of the Datsun banged his car into the car behind him, then banged the car in front of him into the intersection, maneuvered from between the cars, and took off at a high rate of speed, with Duncan and Sullivan following.

At another intersection controlled by a stop light, the light was red when the Datsun approached. The Datsun ran into the concrete divider in the road, and then continued through the red light. This brought the Datsun to the attention of San Anselmo Police Officers Barnett and Johnston, who were in their patrol car, stopped at the intersection for the red light. The officers had heard a police broadcast about the hit and run by a blue Datsun or Toyota. Sullivan yelled to the officers that the Datsun had been in a hit and run accident. Officer Barnett saw that the right front of the Datsun was dented. The officers turned on their emergency lights and siren and pursued the Datsun. The Datsun driver ignored the officers' commands to pull over and stop, and continued to flee.

The Datsun nearly claimed a second victim, but Kenneth Genetti, who was standing at the back of his truck which was parked at the

curb, was quick enough to jump out of the Datsun's path. Genetti wrote down the license number of the Datsun and reported it to the police, along with a description of the Datsun. The Datsun then turned onto Greenfield Street, lost control in a curve, and collided into a parked Honda automobile. The officers pulled their vehicle up against the rear of the Datsun, so as to box it in. The officers then got out and approached the driver of the Datsun.

The driver of the Datsun smelled strongly of alcohol. His eyes were glassy and bloodshot. His speech was slow and slurred. He was unable to stand or walk on his own. He was extremely drunk. He was placed under arrest and taken to the police station. Duncan and Sullivan testified that the person they chased was the person arrested. They testified that appellant appeared drunk. On the way to the police station, appellant repeated such statements as, "Is he okay? He just jumped out in front of me."

Deputies at the county jail noted that appellant was obviously very drunk when he arrived at the jail.

Gross and Genetti were transported to the Datsun; both positively identified it as the car involved in the incidents.

At trial, appellant was identified by the arresting officers as the very drunk driver taken from the Datsun; witnesses Gross, Duncan and Sullivan identified appellant as the driver of the car that struck Pencovic; appellant's Datsun was identified as the offending vehicle by Gross and by Sullivan and Duncan, who had followed it from the point of impact to the end of appellant's flight. Appellant admitted at trial that he was driving the blue Datsun at the time; that he was driving under the influence of alcohol; that he was speeding and driving recklessly; that he ran stop signs; that he was fleeing apprehension by the police because he was driving under the influence of alcohol; that he had been pursued by Duncan's and Sullivan's Cadillac; that he had nearly run down witness Genetti; that he had banged the cars at one intersection; and finally, that he had crashed into the parked Honda. He denied only that he had hit victim Pencovic and fled. He claimed that someone else, driving recklessly in the same area, at the same time, in a car like his, must have hit Pencovic and fled.

I

■ Appellant first contends that the trial court erred in failing to instruct the jury *sua sponte* on circumstantial evidence. The thrust of appellant's argument may be stated as follows: (a) criminal liability under section 20001 (hit and run driving) attached only if he knew that injury occurred (*People* v. *Carter* (1966) 243 Cal.App.2d 239, 241 [52 Cal.Rptr. 207]); (b) the prosecution relied on circumstantial evidence in this case to prove the element of knowledge; (c) as a consequence, the trial court should have given CALJIC No. 2.01 by explaining to the jury that appellant could be convicted based upon circumstantial evidence if the facts and circumstances were not only entirely consistent with his guilt, but also irreconcilable with any other rational conclusion.[2]

In addressing appellant's argument we initially point out that the fact that the elements of a charged offense include mental elements which must be proved by inferences drawn from circumstantial evidence does not alone require an instruction on the effect to be given such evidence. The rule rather is that the instruction must be given by the court on its own motion only where the case of the People rests substantially or entirely on circumstantial evidence. (*People* v. *Yrigoyen* (1955) 45 Cal.2d 46, 49 [286 P.2d 1]; *People* v. *Bender* (1945) 27 Cal.2d 164 [163 P.2d 8].) However, the instruction need not be given if the circumstantial evidence is only incidental to, or corroborative of, the direct evidence, or where the circumstantial evidence is not equally consistent with a rational conclusion that the defendant is innocent of the crime charged. (*People* v. *Wiley* (1976) 18 Cal.3d 162, 175 [133 Cal.Rptr. 135, 554

---

[2]CALJIC No. 2.01 reads as follows: "...[A] finding of guilt as to any crime may not be based on circumstantial evidence unless the proved circumstances are not only (1) consistent with the theory that the defendant is guilty of the crime, but (2) cannot be reconciled with any other rational conclusion.

"Further, each fact which is essential to complete a set of circumstances necessary to establish the defendant's guilt must be proved beyond a reasonable doubt. In other words, before an inference essential to establish guilt may be found to have been proved beyond a reasonable doubt, each fact or circumstance upon which such inference necessarily rests must be proved beyond a reasonable doubt.

"Also, if the circumstantial evidence [as to any particular count] is susceptible of two reasonable interpretations, one of which points to the defendant's guilt and the other to his innocence, it is your duty to adopt that interpretation which points to the defendant's innocence, and reject that interpretation which points to his guilt.

"If, on the other hand, one interpretation of such evidence appears to you to be reasonable and the other interpretation to be unreasonable, it would be your duty to accept the reasonable interpretation and to reject the unreasonable."

P.2d 881]; see also *People* v. *Malbrough* (1961) 55 Cal.2d 249 [10 Cal.Rptr. 632, 359 P.2d 30]; *People* v. *Morrisson* (1979) 92 Cal.App. 3d 787 [155 Cal.Rptr. 152]; *People* v. *Blankenship* (1959) 171 Cal. App.2d 66 [340 P.2d 282].)

In the case at bench, direct evidence by eyewitnesses was introduced showing that appellant's car struck the victim throwing him forward into the street, that after the impact appellant paused or stopped his car, backed up and maneuvered around the victim's body and then fled at a high rate of speed, leaving the seriously injured victim behind.

The significance of the above-stated evidence is at least threefold. One, the commission of the crime here was proven primarily by direct evidence of which the circumstantial evidence was only corroborative. As stated in *People* v. *Wiley, supra,* 18 Cal.3d 162, the instruction is not necessary when the evidence of defendant's guilt is primarily direct evidence given by eyewitnesses. Furthermore, the evidence related above cannot be reasonably construed as showing that appellant was unaware that the victim had been hit. As set out before when the only inference to be drawn from the circumstantial evidence points to the existence of a requisite mental state and/or when the circumstantial evidence is not equally consistent with a rational conclusion that the defendant is innocent of the offense charged, instruction on circumstantial evidence need not be given. (*Id.,* at p. 175; *People* v. *Morrisson, supra,* 92 Cal.App.3d at p. 794.)

## II

The trial court instructed the jury that appellant's false statements before the trial and his flight after the crimes could be considered in determining his guilt and innocence because they constitute factors tending to show his consciousness of guilt. (CALJIC Nos. 2.03, 2.52.)[3] Appellant claims that the delivery of the above charges prejudicially affected his case. We disagree.

---

[3]The instructions in dispute read as follows: "If you find that before this trial the defendant made false or deliberately misleading statements concerning the charge upon which he is now being tried, you may consider such statements as a circumstance tending to prove a consciousness of guilt but it is not sufficient of itself to prove guilt. The weight to be given to such a circumstance and its significance, if any, are matters for your determination." (CALJIC No. 2.03.)

"The flight of a person immediately after the commission of a crime, or after he is accused of a crime, is not sufficient in itself to establish his guilt, but is a fact which, if

■ Appellant's first complaint is directed at CALJIC No. 2.03. He contends that said instruction was improper because there was no evidence that he made any false statements prior to trial.

It has been held that in a criminal case instructions must be given depending upon the facts of the case. (*People* v. *Romero* (1975) 48 Cal. App.3d 752, 758 [121 Cal.Rptr. 800].) In the present case the evidence to support the instruction came from the appellant himself. After his arrest and while enroute to the police station appellant stated, "He just jumped out in front of me." Appellant claims the above statement related to Genetti rather than Pencovic. However, appellant's own trial testimony was that Genetti jumped *back* and Genetti's testimony was that he jumped back. Furthermore, if the statement referred to the victim it is also false inasmuch as the record unequivocally showed that Pencovic was kneeling or squatting next to the driver's window of the parked car, talking to the driver when he was struck by appellant's vehicle. In view of the quantum of proof required by the case law, we cannot say that CALJIC No. 2.03 was not supported by sufficient evidence.

In reply to appellant's alternative argument that the jury may have been misled to believe that CALJIC No. 2.03 applied to trial testimony as well, we briefly note that CALJIC No. 2.03 explicitly states that the subject matter of the instruction is false or deliberately misleading statements made *before trial* (see fn. 3, *ante*). It is, of course, axiomatic that the jury is presumed to have followed the instructions and obeyed the law. (*People* v. *Chavez* (1958) 50 Cal.2d 778, 790 [329 P.2d 907].)

■ Appellant next contends that the giving of CALJIC No. 2.52 in a case where, as here, the knowing flight from an injury accident constitutes the offense, is improper because it removes the proof of knowledge from the case and amounts, in effect, to a directed verdict. The very same issue was raised by the defendant and decided by *People* v. *Johnson* (1969) 271 Cal.App.2d 616 [76 Cal.Rptr. 768], cert. den. 397 U.S. 952 [25 L.Ed.2d 135, 90 S.Ct. 979].

proved, may be considered by you in the light of all other proved facts in deciding the question of his guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine." (CALJIC No. 2.52.)

## III

 Appellant's next contention is that the conviction for felony hit and run driving (§ 20001) cannot stand because there is no evidence that he knew that Pencovic was injured as a result of the accident. Appellant's argument is supported by neither the law nor the record.

 It is, of course, well recognized that under section 20001, criminal liability attaches only if the driver actually knew of the injury or if he knew that the accident was of such a nature that one would reasonably anticipate that it resulted in injury to a person. (*People* v. *Holford* (1965) 63 Cal.2d 74, 78 [45 Cal.Rptr. 167, 403 P.2d 423].) Such knowledge, however, may be imputed to the driver of a vehicle where the fact of personal injury is visible or obvious, or where the seriousness of the collision would lead a reasonable person to assume that there must have been resulting injury. (*People* v. *Carter, supra,* 243 Cal. App.2d 239, at p. 241.) Moreover, the case law is clear that the knowledge of the driver is a factual question for the determination of the trier of fact; that such knowledge is usually proved by the facts and circumstances surrounding the individual case; and that the claim of the driver that he was unaware of the injury caused to the victim of the hit and run accident is not dispositive of the issue of knowledge. (*People* v. *Newland* (1940) 15 Cal.2d 678, 681 [104 P.2d 778]; *People* v. *Wolf* (1978) 78 Cal.App.3d 735, 740 [144 Cal.Rptr. 344]; *People* v. *Kuhn* (1956) 139 Cal.App.2d 109, 112-113 [292 P.2d 964]; *People* v. *Henry* (1937) 23 Cal.App.2d 155, 159-160 [72 P.2d 915].)

 In the case at bench, the personal injury inflicted upon Pencovic was visible, obvious and very serious. Furthermore, the facts and circumstances surrounding the incident leave no doubt that appellant as a reasonable person should have known that the impact resulted in severe injury to the victim. By way of summary, the evidence shows that it was still light when the incident occurred; that Pencovic was clearly visible to the occupants of the cars behind appellant's prior to the impact; that appellant's car turned or curved toward the victim and struck him; that the impact was so loud that witness Gross—in the car behind appellant's—thought she heard it; that the impact tossed the victim 30 feet ahead of appellant's car from the point of impact; that appellant's car then stopped or paused, backed up, maneuvered around the victim's body, then took off at a high rate of speed; that when Duncan forced appellant's car to stop and Sullivan told appellant that he

had hit someone back there, appellant took off again at a high rate of speed; that after his arrest, while he was being transported to the police station, appellant stated "Is he okay? He just jumped out in front of me."[4] From this evidence the trier of fact could reasonably conclude that appellant knew that he seriously injured the victim and that he made a desperate attempt to flee the scene in order to avoid the consequences of his action.

IV

In the trial court appellant moved for dismissal of the charges against him and for suppression of evidence of blood alcohol test on the ground that in violation of section 13353, subdivision (a)[5] the officers denied him the right to choose among blood, breath or urine tests and subjected him by force to a blood test. In relying on *Brown* v. *Municipal Court* (1978) 86 Cal.App.3d 357 [150 Cal.Rptr. 216], the trial court granted the motion to suppress the evidence, but denied the motion to dismiss the information. On appeal, appellant contends that the suppression of evidence was not an adequate remedy in the instant case and that the trial court should have dismissed the charges against him for denial of due process occasioned by police brutality. (*Rochin* v. *California* (1952) 342 U.S. 165 [96 L.Ed. 183, 72 S.Ct. 205, 25 A.L.R.2d 1396].) Appellant's contention must be rejected because it is contrary to the law and unsupported by the record of the instant case.

---

[4]As previously discussed appellant claims this statement related to Genetti but whether it related to Genetti or Pencovic was for the jury to determine.

[5]Section 13353, subdivision (a) provides in pertinent part: "(a) Any person who drives a motor vehicle upon a highway shall be deemed to have given his consent to a chemical test of his blood, breath or urine for the purpose of determining the alcoholic content of his blood if lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle under the influence of intoxicating liquor. The test shall be incidental to a lawful arrest and administered at the direction of a peace officer having reasonable cause to believe such person was driving a motor vehicle upon a highway while under the influence of intoxicating liquor. Such person shall be told that his failure to submit to or complete such a chemical test will result in the suspension of his privilege to operate a motor vehicle for a period of six months.

"*The person arrested shall have the choice of whether the test shall be of his blood, breath or urine,* and he shall be advised by the officer that he has such choice. If the person arrested either is incapable, or states that he is incapable, of completing any chosen test, he shall then have the choice of submitting to and completing any of the remaining tests or test, and he shall be advised by the officer that he has such choice.

"Such person shall also be advised by the officer that he does not have the right to have any attorney present before stating whether he will submit to a test, before deciding which test to take, or during administration of the test chosen." (Italics added.)

■ As pointed out in cases, the immediate purpose of section 13353, the implied consent law, is to obtain the best evidence of blood alcohol content at the time of the arrest of a person who is reasonably believed to be driving while intoxicated. Its ultimate purpose is to inhibit intoxicated persons from driving on the highways (*Kesler* v. *Department of Motor Vehicles* (1969) 1 Cal.3d 74, 77 [81 Cal.Rptr. 348, 459 P.2d 900], cert. den. 397 U.S. 989 [25 L.Ed.2d 396, 90 S.Ct. 1121]; *Zidell* v. *Bright* (1968) 264 Cal.App.2d 867 [71 Cal.Rptr. 111].) ■ It is also well recognized that, as a matter of public policy, it is desirable to obtain a sample of one of the tests in a noncoercive fashion thereby substituting volition for compulsion. (*People* v. *Superior Court (Hawkins)* (1972) 6 Cal.3d 757, 764-765 [100 Cal.Rptr. 281, 493 P.2d 1145]; *People* v. *Fite* (1968) 267 Cal.App.2d 685, 690-691 [73 Cal. Rptr. 666].)

However, the desirability of obtaining blood samples in a noncoercive manner by one of the tests provided for in section 13353 may not be equated with constitutionality. (*People* v. *Brannon* (1973) 32 Cal.App. 3d 971, 975 [108 Cal.Rptr. 620].) It is well established that the government may utilize the results of chemical analysis performed upon a blood sample forcibly removed provided that (a) the removal is done in a reasonable, medically approved manner; (b) is incident to the defendant's arrest; and (c) is based upon the reasonable belief that the person is intoxicated. (*People* v. *Puccinelli* (1976) 63 Cal.App.3d 742, 746 [135 Cal.Rptr. 534]; see also, *Schmerber* v. *California* (1966) 384 U.S. 757, 766-772 [16 L.Ed.2d 908, 917-920, 86 S.Ct. 1826]; *Breithaupt* v. *Abram* (1957) 352 U.S. 432 [1 L.Ed.2d 448, 77 S.Ct. 408]; *People* v. *Brannon, supra*, 32 Cal.App.3d 971.)

■ In the case at bench, the triple criteria set forth above have been clearly met. Appellant was under arrest when the blood sample was taken; he was concededly under the influence of alcohol; and the blood sample was taken by a blood technician in a medically approved manner. As a consequence, the blood sample obtained in the case was clearly admissible in evidence.

This conclusion of ours is amply supported by case authorities. For example, in *People* v. *Fite, supra*, 267 Cal.App.2d 685, upon refusal of the defendant to submit to a blood alcohol test under section 13353, blood was withdrawn nonconsensually and a chemical test performed thereon. The court squarely held that the test was admissible by point-

ing out that "Vehicle Code section 13353 complements rather than supersedes section 23101, and that the enactment of the implied consent law in no way affected the admissibility of blood alcohol tests under established case law." (*People* v. *Fite, supra,* at p. 690; accord, *People* v. *Brannon, supra,* 32 Cal.App.3d 971.)

Appellant's contention that the blood sample in dispute was taken by way of police brutality and therefore was violative of his due process right, is not borne out by the record. All that has been shown was that appellant was restrained by five police officers while a technician removed the blood sample from his left arm. At the same time there is no evidence whatsoever that the police used more force than necessary to overcome appellant's resistance or introduced any wantonness, violence or beatings. As our Supreme Court repeatedly emphasized, the taking of the defendant's blood for an alcohol test in a medically approved manner did not constitute brutality or shock the conscience even if it takes place against the will of the defendant and that in such circumstance the nonconsenting defendant may not well complain of denial of due process under the rule pronounced in *Rochin* v. *California, supra,* 342 U.S. 165. (*People* v. *Duroncelay* (1957) 48 Cal.2d 766, 770 [312 P.2d 690]; *People* v. *Haeussler* (1953) 41 Cal.2d 252, 257 [260 P.2d 8].)

We observe in passing that appellant's reliance on *Brown* v. *Municipal Court, supra,* 86 Cal.App.3d 357 is obviously misplaced. *Brown* was not concerned with the issue here presented, i.e., the violation of section 13353, subdivision (a), but rather with the violation of section 13354, subdivision (b), which authorizes the person tested to obtain an additional test in order to accurately determine the amount of his blood alcohol. Moreover, the court held that the violation of due process found in that case required only the exclusion of the breath test results, but not the dismissal of the action.

In sum, the foregoing discussion persuasively shows that appellant was not entitled to the suppression of the blood alcohol test results, much less to the dismissal of the charges against him. Since by the court's favorable ruling suppressing the evidence appellant received more than he was legally entitled to, he is in no position to complain on appeal.

184 

Appellant finally argues that the prosecutor was guilty of prejudicial misconduct because (1) on the diagram depicting the location of the accident the hit and run car was designated as "Ryan vehicle" even before evidence was adduced establishing the same; and (2) the prosecutor improperly alluded to appellant's prior conviction for drunk driving during cross-examination of appellant. Appellant's contention must fail for the following reasons.

 As far as the first issue is concerned, the record discloses that after defense counsel's objection, the court admonished the jury to disregard the designation of "Ryan vehicle" on the diagram until the testimonies of witnesses established that fact. It is axiomatic that the prejudicial effect of errors may be overcome by subsequent corrective action such as the admonishment of the jury and that in such event the error may be deemed cured. (*People* v. *Seiterle* (1963) 59 Cal.2d 703 [31 Cal.Rptr. 67, 381 P.2d 947]; see also, *People* v. *Gilliam* (1974) 41 Cal.App.3d 181, 194 [116 Cal.Rptr. 317]; *People* v. *Dontanville* (1970) 10 Cal.App.3d 783, 795 [89 Cal.Rptr. 172].)

Appellant's second argument must be rejected upon two grounds. One, contrary to appellant's assertion, the prosecutor did not refer to appellant's prior conviction for drunk driving during cross-examination. All that the prosecutor asked was whether appellant knew what blood alcohol *levels* were and suggested that in 1978, appellant had told a police officer that he had consumed three beers. These remarks however fell short of referring to blood *tests* and/or to a prior conviction or prior arrest of the appellant. Two, the trial court admonished the jury to disregard this line of inquiry thereby curing any possible harmful effect of the prosecutorial remarks. (*People* v. *Gilliam; People* v. *Dontanville*, both *supra.*)

Lastly, and perhaps even more significantly, the record as a whole, convincingly demonstrates that the prosecutorial questions in dispute did not affect the fairness of the trial, nor work prejudice to appellant's cause. (*People* v. *Bolton* (1979) 23 Cal.3d 208, 214-215 [152 Cal.Rptr. 141, 589 P.2d 396].) Most notably, appellant admitted that he was driving under the influence of alcohol; that he was speeding; that he went through stop signs; that he nearly ran down Genetti; that he banged into cars at one intersection; and that he was fleeing the police

because he knew that he was driving under the influence of alcohol. The testimonies of numerous eyewitnesses in turn established beyond a reasonable doubt that appellant had struck and seriously injured Pencovic and that he fled the scene thereafter. Since it is thus clear that any reasonable jury would have reached the same verdict even in the absence of the prosecutor's remarks the alleged misconduct must be held harmless beyond any doubt. (*People* v. *Bolton, supra*, 23 Cal.3d 208; *People* v. *Beivelman* (1968) 70 Cal.2d 60, 75 [73 Cal.Rptr. 521, 447 P.2d 913], cert. den. 406 U.S. 971.)

The judgment is affirmed.

Christian, J., and Poché, concurred.

A petition for a rehearing was denied February 25, 1981, and appellant's petition for a hearing by the Supreme Court was denied April 1, 1981.