[Civ. No. 27261. Fourth Dist., Div. Two. May 14, 1982.]

CANDIDO ORESEO SANCHEZ, Plaintiff and Appellant, v.
DORIS ALEXIS, as Director, etc., Defendant and Respondent.

COUNSEL

Ronald R. Talmo for Plaintiff and Appellant.

George Deukmejian, Attorney General, and Melvin R. Segal, Deputy Attorney General, for Defendant and Respondent.

OPINION

MORRIS, P. J.—Appellant Candido Sanchez was lawfully arrested for driving under the influence of alcohol. He refused to submit to a chemical test under the implied consent law and his license was suspended. He filed a petition for a writ of mandate in the superior court challenging the suspension of his driving privilege. His petition was denied and this appeal followed. The California Supreme Court stayed the effect of the license revocation pending final determination of this appeal.

Sanchez contends that suspension of his license violated settled state law as well as procedural due process. The basis of this appeal is the failure of the arresting officer to advise Sanchez that if he refused to submit to a test that refusal "may be used against him in a court of law." No other issues are raised.

In 1980 Vehicle Code section 13353 was amended to add that the arrestee "shall also be advised by the officer that, in the event of refusal to submit to a test, such refusal may be used against him in a court of

law."[1] A 1981 amendment did not change the substance of this provision.[2]

It is agreed that the arresting officer did not advise Sanchez that failure to submit could be used against him in a court of law. **(1a)** Sanchez argues that the legal effect of this omission is to preclude the revocation of his driving privilege. The Director of the Department of Motor Vehicles (hereafter Department) argues that this advisement has no relationship to administrative license suspension proceedings under the implied consent law.

Our conclusion is that the advisement which was omitted was not intended by the Legislature to apply to the Department's administrative license suspension procedure. The most obvious reason for this conclusion is supplied by the face of the statute. The warning required is that refusal "may be used against him in a *court of law*." The Department's revocation procedure is administrative and does not require the involvement of a "court of law." The only reasonable interpretation is that the reference is to the criminal trial which may result due to the driving under the influence. It is the rule that the refusal to submit to a chemical test may be used against the driver in a criminal trial. (*People v. Sudduth* (1966) 65 Cal.2d 543, 546 [55 Cal.Rptr. 393, 421 P.2d 401]; *People v. Roach* (1980) 108 Cal.App.3d 891, 894 [166 Cal.Rptr. 801].)

Refusal to submit to a chemical test is the cornerstone of the administrative procedure. Subdivision (c) of section 13353 specifies the issues which are to be covered in the administrative proceeding. They are: (1) whether there was reasonable cause for the officer to believe the person was driving under the influence; (2) whether there was an arrest; (3) whether there was a refusal to submit to a chemical test after being requested to do so by the officer; and (4) whether the person had been advised that the driving privilege would be suspended if he refused to

---

[1]The advisement was made a part of the third unnumbered paragraph of subdivision (a) of section 13353. At the time of the offense that paragraph read: "Such person shall also be advised by the officer that he does not have the right to have an attorney present before stating whether he will submit to a test, before deciding which test to take, or during administration of the test chosen, *and shall also be advised by the officer that, in the event of refusal to submit to a test, such refusal may be used against him in a court of law.*" (Italics added.)

[2]The 1981 amendment placed the provision quoted in footnote 1 into subdivision (a) (4) of section 13353. The changes were not substantive. The feminine gender was added ("he or she"), "Such person" was changed to "The person" and "such refusal" was changed to "the refusal."

submit to or complete a test. Upon amending section 13353 to require an advisement that the refusal could be used against the driver in a court of law, the Legislature did not amend subdivision (c) to add an issue in the administrative proceeding concerning this advisement. This supports the conclusion that the Legislature did not intend the advisement to relate to the administrative proceeding.

Assembly Bill No. 2488 effected the amendment under review. A report on the bill in the Senate Committee on Judiciary stated that "[t]he purpose of the bill is to inform DUI suspects of the consequences of refusing to submit to a sobriety test, and thereby encouraging their compliance." This language is directed to already existing consequences, i.e., use of refusal against the driver in a criminal prosecution. The report in the Assembly Committee on Criminal Justice is similar. It recites, in part: "Proponents indicate that this legislation would afford the arrested person further incentive for submitting to these tests by making him/her aware of the potential use of such a refusal in trial." Both reports observed that case authority already provided that refusal to submit to a test could be used in evidence at trial, the prosecutor could comment on the refusal and the court could instruct on the refusal.

Both reports indicate that Assembly Bill No. 2488 was unclear as to the legal effect of a failure to give the requisite admonishment. The Legislature took no action to clear up that matter.

Sanchez reasons that the advisement cannot relate to criminal proceedings and thus, by the process of elimination, must refer to administrative proceedings. This argument contradicts the plain meaning of the statute as derived from its face. We are directed to *People* v. *Brannon* (1973) 32 Cal.App.3d 971 [108 Cal.Rptr. 620].

In *Brannon* the defendant was arrested for drunk driving. The police did not advise the defendant of his choice of three chemical tests under the implied consent law. Instead, they simply had him complete the breathalyzer test. At the criminal trial the prosecution was allowed to introduce evidence of the test results over defendant's objection. The *Brannon* court determined that the failure to give the defendant the test choices did not require suppression of the test results. The court found no constitutional prohibition to admission of the test results in the criminal trial and determined there was a legislative intent to allow such admission even though there had been no compliance with the rel-

evant portion of the implied consent law. Sanchez relies on that portion of *Brannon* which states: "Evidence obtained in violation of a statute is not inadmissible per se unless the statutory violation also has a constitutional dimension." (At p. 975.)

*Brannon* is one of many cases recognizing the dual objectives of section 13353, to wit: (1) securing evidence of intoxication for use in court; and (2) providing an administrative penalty for those refusing to comply. *Brannon* recognized that a basis independent of the implied consent law existed for admission of the test results in the criminal trial. *Brannon* also held that failure to provide the driver with the required choices went to the administrative side of the problem precluding license suspension by the Department.

When the arresting officer fails to advise the arrestee that failure to submit to a chemical test will result in loss of the driving privilege, this precludes the administrative suspension of the driving privilege. However, the refusal may still be used against the arrestee in criminal proceedings based upon the driving under the influence. In other words, the sanction imposed must be related to the error. A prerequisite to administrative license revocation is a warning that failure to submit to a chemical test will result in loss of the driving privilege. Failure to give the warning has no effect on introduction of the refusal in a criminal trial because the failure to give the advisement relates only to the administrative proceeding. (*People* v. *Brannon, supra,* 32 Cal.App.3d 971.)

The same division between the administrative and criminal processes for drunk driving is apparent in the terms of the advisement under review. Here the advisement that refusal can be used against the person "in a court of law" clearly relates only to the criminal proceeding. The sanction, if any, to be imposed in a criminal trial for failure to give the advisement is beyond the scope of this appeal. What is clear is that no logical reason exists to impose a sanction in the administrative proceeding for omission of an advisement that relates solely to the criminal prosecution for driving under the influence.

"Vehicle Code section 13353 was passed to eliminate the carnage on our highways caused by those who drive after drinking excessively. Cases interpreting this code section repeatedly state '[t]he purpose of the Implied Consent Law is to obtain the best evidence of intoxication at the time of arrest and to provide a fair and accurate system of detec-

tion and protection of the public and to inhibit drunk driving. [Citation.]' [Citation omitted.]" (*Behan* v. *Alexis* (1981) 116 Cal.App. 3d 403, 407 [172 Cal.Rptr. 132].) "The Legislature had a sufficient reason for requiring a chemical test, and for providing a simple administrative sanction to enforce that requirement. The combination of criminal punishment and administrative sanctions which are imposed upon a person convicted of drunk driving ... serve a different purpose and, in a particular case, may be more or less onerous than the sanction imposed under section 13353." (*Walker* v. *Department of Motor Vehicles* (1969) 274 Cal.App.2d 793, 796 [79 Cal.Rptr. 433].)

■ A statute must be read in light of both the objective it seeks to achieve and the evil it seeks to avert. (*People* v. *Alday* (1973) 10 Cal.3d 392, 395 [110 Cal.Rptr. 617, 515 P.2d 1169].) The objective of the amendment under review was to inform the arrestee of the consequences of refusing the test, and thereby encourage him to voluntarily submit to one of the chemical tests. It is our duty to give the amendment to the statute a reasonable construction which conforms to the apparent purpose and intention of the Legislature. (*Clean Air Constituency* v. *California State Air Resources Bd.* (1974) 11 Cal.3d 801, 813 [114 Cal.Rptr. 577, 523 P.2d 617].)

■ "The intent of the Legislature must be ascertained from the language of the enactment and where, as here, the language is clear, there can be no room for interpretation." (*Caminetti* v. *Pac. Mutual L. Ins. Co.* (1943) 22 Cal.2d 344, 353-354 [139 P.2d 908].) "When statutory language is thus clear and unambiguous there is no need for construction, and courts should not indulge in it." (*Solberg* v. *Superior Court* (1977) 19 Cal.3d 182, 198 [137 Cal.Rptr. 460, 561 P.2d 1148].)

■ "In interpreting particular words, phrases, or clauses in a statute, 'the entire substance of the statute or that portion relating to the subject under review should be examined in order to determine the scope and purpose of the provision containing such words, phrases, or clauses.' [Citation omitted.] The words in question '"must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear."' [Citations omitted.]" (*Tripp* v. *Swoap* (1976) 17 Cal.3d 671, 679 [131 Cal.Rptr. 789, 552 P.2d 749].) Subject to the underlying principle that a statute is to be construed to effect the intent of the Legislature, statutes are ordinarily interpreted according to their plain meaning by looking at the usual, ordinary import of the language employed in framing the statute. (*Cline* v. *Yamaga* (1979) 97 Cal.App.

3d 239, 245 [158 Cal.Rptr. 598]; *Steinberg* v. *Los Angeles City Unified School Dist.* (1979) 95 Cal.App.3d 437, 441 [157 Cal.Rptr. 7].)

 Applying these principles, it is clear that the advisement relates to the criminal proceeding, not the administrative proceeding, and that the Legislature did not intend that error in giving the particular advisement would result in precluding the administrative suspension of the driver's license. We are satisfied that the advisement has no direct relationship to the administrative proceeding. A refusal to submit without knowing the criminal consequences of such a refusal is not related to the administrative purposes of the law. It relates solely to evidentiary questions in the criminal prosecution.

Sanchez also argues a violation of procedural due process. The substance of the argument is explained by Sanchez as follows: "Although a state is not required to establish a given right, once it is established, the state (or its officers) cannot take away that right without procedural due process. Applying these accepted principles to the facts before this Court, it is clear that for procedural due process purposes, the statute created right to be told that a refusal can be used in court is 'protected' within the meaning of the Fourteenth Amendment. The state may have no obligation to establish such a right; but, once the state had created the right in 1980 by adoption of the notice provisions, this right cannot be taken away without appropriate procedural protections."

Sanchez' argument would be more appropriate in an appeal from a criminal conviction for driving under the influence where his refusal was used against him without having given him the related warning. We will not delve into his argument beyond observing a dispositive flaw in his attempt to apply the two-pronged procedural due process analysis to this case. The first prong of this analysis requires the identification of an interest protected from deprivation either by policy, custom or state law. The second prong requires a determination of a number of factors including: (1) the private interest which will be affected by the official action; (2) the risk of erroneous deprivation of that interest through the procedures used; (3) the probable value of additional procedural safeguards; and (4) the government's interest including the burden upon it which additional procedural requirements would cause. Sanchez argues that the risk of erroneous deprivation consists of a risk of refusing to submit to the implied consent law without knowing the criminal consequences of doing so. He says the value of this advisement is to alert the individual that the refusal will be used against him in a court of law.

The problem with Sanchez' analysis is that, like the amendment itself, it relates solely to criminal proceedings and has no relevance to the administrative license suspension process. It is in the criminal proceeding where the question of the sanction arises for the failure to give the warning. Until there is an attempt to use his refusal "in a court of law," the "protected" interest is not in jeopardy.

The present proceeding relates solely to the administrative action suspending his driving privilege.

Judgment affirmed.

Kaufman, J., and McDaniel, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 14, 1982.