[No. H008583. Sixth Dist. Feb. 28, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
GARNETT TAYLOR FORD, Defendant and Appellant.

## Counsel

Heisler, Stewart & Daniels, William B. Daniels and Julie E. Moore for Defendant and Appellant.

Dean D. Flippo, District Attorney, and Marie Aronson, Deputy District Attorney, for Plaintiff and Respondent.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Morris Beatus and Gerald A. Engler, Deputy Attorneys General, as Amici Curiae on behalf of Plaintiff and Respondent.

## Opinion

ELIA, J.—In March of 1990, an officer of the Monterey Police Department arrested appellant for driving under the influence of alcohol. At the police station, the officer requested that a licensed clinical technologist withdraw a blood sample from appellant. Without appellant's consent, but without force, the technologist took the sample using a standard procedure and materials he obtained from a local hospital.[1] In this case we are called upon to decide whether this seizure of appellant's blood was constitutionally permissible. We conclude that it was.

Appellant was charged with violating Vehicle Code sections 23152, subdivision (a) (driving under the influence of alcohol) and 23152, subdivision

---

[1]Appellant makes no claim that the officer failed to advise him properly regarding his choice of chemical test before his blood was drawn. (Veh. Code, § 23157.)

(b) (driving with a blood-alcohol level of .08 or more). After pleading not guilty, he brought a Penal Code section 1538.5 motion to suppress evidence of his blood sample. When the municipal court denied the motion, he appealed to the superior court appellate department. The appellate department reversed the municipal court's ruling, and we certified the question to this court for resolution. (Cal. Rules of Court, rule 62(a).)

Appellant contends that this evidence was seized in violation of his Fourth Amendment rights because the blood sample was not taken in a medically approved manner. He argues that taking a blood sample without his informed consent violates accepted medical practice and that the technologist was not properly authorized under California statutory law. He also argues that the withdrawal of an arrestee's blood, without his or her consent, in a "simple non-injury, non-accident" driving under the influence case is constitutionally unreasonable.

In *Schmerber* v. *California* (1966) 384 U.S. 757 [16 L.Ed.2d 908, 86 S.Ct. 1826], the United States Supreme Court held that an arrestee for driving under the influence of alcohol may be required to submit to a blood test against his will provided that "the means and procedures employed in taking his blood respect[] relevant Fourth Amendment standards of reasonableness." (*Id.* at p. 768 [16 L.Ed.2d at p. 918].) Particularly relevant to our inquiry here, the *Schmerber* court noted:

"Finally, the record shows that the test was performed in a reasonable manner. Petitioner's blood was taken by a physician in a hospital environment according to accepted medical practices. We are thus not presented with the serious questions which would arise if a search involving use of a medical technique, even of the most rudimentary sort, were made by other than medical personnel or in other than a medical environment—for example, if it were administered by police in the privacy of the stationhouse. To tolerate searches under these conditions might be to invite an unjustified element of personal risk of infection and pain." (384 U.S. at pp. 771-772 [16 L.Ed.2d at p. 920].)

The courts of this state have frequently summarized *Schmerber* as permitting warrantless compulsory seizure of blood for the purpose of a blood-alcohol test if the procedure (1) is done in a reasonable, medically approved manner, (2) is incident to a lawful arrest, and (3) is based upon reasonable belief the arrestee is intoxicated. (See, e.g., *Mercer* v. *Department of Motor Vehicles* (1991) 53 Cal.3d 753, 759-760 [280 Cal.Rptr. 745, 809 P.2d 404]; *People* v. *Superior Court (Hawkins)* (1972) 6 Cal.3d 757, 761 [100 Cal.Rptr. 281, 493 P.2d 1145]; *People* v. *Fiscalini* (1991) 228 Cal.App.3d

1639, 1642 [279 Cal.Rptr. 682]; *People* v. *Ryan* (1981) 116 Cal.App.3d 168, 182 [171 Cal.Rptr. 854]; *People* v. *Brannon* (1973) 32 Cal.App.3d 971, 974-975 [108 Cal.Rptr. 620].)

Appellant asserts that "a clinical laboratory technologist must have medical informed consent to withdraw blood." At the hearing on his motion to suppress, appellant called a doctor who testified that "[i]t is not a standard medical practice to withdraw blood on anyone unless you have informed consent."

■ Informed consent is the consent to a particular medical procedure which is given by a patient after consultation with his or her health care provider. For example, a surgeon with superior knowledge of the risks of a proposed operation provides the patient with sufficient information to make his or her very personal decision,. whether to consent to the surgery, an intelligent one. Justice Mosk explained in *Cobbs* v. *Grant* (1972) 8 Cal.3d 229, 243 [104 Cal.Rptr. 505, 502 P.2d 1], "as an integral part of the physician's overall obligation to the patient there is a duty of reasonable disclosure of the available choices with respect to proposed therapy and of the dangers inherently and potentially involved in each."

Informed consent is an accepted medical practice in the context of the health care provider's duty of disclosure to his or her consumer patient, but has no application here. The very point of *Schmerber* is that blood may be withdrawn without consent. The court found the blood sample reasonably obtained "despite [Schmerber's] refusal, . . . to consent to the test." (384 U.S. at p. 759 [16 L.Ed.2d at p. 913].) The lack of informed consent does not make the withdrawal of appellant's blood an unreasonable seizure.

■ Appellant contends that the licensed clinical technologist who withdrew the sample was not authorized by the Business and Professions Code to do so, and, thus, the sample was not taken in a medically approved manner.

Business and Professions Code section 1242 provides that a clinical laboratory technologist may only withdraw blood "upon specific authorization from any person in accordance with the authority granted under any provisions of law relating to the healing arts." Such authorization may come from a duly licensed physician, bioanalyst, or other persons authorized to direct a clinical laboratory. (See Bus. & Prof. Code, §§ 1204 & 1209.) When the technologist withdrew the sample of appellant's blood, he was not acting at the direction of any physician or other person listed in the Business and Professions Code. He was doing so at the written request of the arresting officer. Vehicle Code section 23158, subdivision (a) provides that only

certain medical personnel, including licensed clinical laboratory technologists "acting at the request of a peace officer may withdraw blood for the purpose of determining the alcohol content therein." Appellant argues that this provision does not provide an exception to the physician authorization requirement of Business and Professions Code section 1242.

Determining whether Vehicle Code section 23158 permits a technologist to withdraw blood at the request of a peace officer as an exception to Business and Professions Code section 1242, or whether a physician's authorization is still required, will not answer the question of whether appellant's blood was withdrawn in a constitutionally impermissible manner. *People* v. *Brannon, supra,* 32 Cal.App.3d 971 held that evidence obtained in violation of state statute is not inadmissible unless the statutory violation also has a constitutional dimension. The court used the knock-notice provisions of Penal Code sections 844 and 1531 as examples of statutes codifying constitutional requirements. *In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744] held that only evidence obtained in violation of the Fourth Amendment of the United States Constitution is subject to the exclusionary rule.

■ What we must determine is whether the manner in which the sample was obtained deviated so far from the medical practices found to be reasonable in *Schmerber* as to render the seizure constitutionally impermissible.

The technologist who withdrew appellant's blood testified at length about his usual procedure for taking blood samples. He examines both arms of the drawee, using a torniquet to make the vein more accessible, and checks the subject's pulse. He executed a statement under penalty of perjury describing these procedures in greater detail and certifying "the blood sample was withdrawn in a medically approved manner in the presence of the above named peace officer; that the instruments used in taking the sample were sterile, clean, and dry . . . ; and that the skin around the area from which the sample was collected was cleansed with . . . a disinfectant . . . before the sample was taken." His former supervisor described him as "an outstanding phlebotomist." Aside from the consent and authorization issues, appellant's expert medical witnesses did not take exception to the manner in which the blood was withdrawn.

Appellant suggests that withdrawing blood at the jail rather than at the local hospital is a violation of equal protection of the law. Although *Schmerber* was concerned about the environment in which the test took place, nothing in this record suggests that the location in which this test occurred was unsafe or unsanitary or that the personnel present would fail to respond properly in the unlikely event of a medical problem resulting from the test.

In analyzing the overall reasonableness of the nonconsensual blood withdrawal in this case, we cannot say the test conditions subjected appellant to "an unjustified element of personal risk of infection or pain." (384 U.S. at p. 772 [16 L.Ed.2d at p. 920].)

Appellant contends that the seizure in this case was unreasonable per se because his is an "unaggravated" case, that is, a "simple non-injury, non-accident" driving under the influence arrest. Appellant argues that the community's interest in his prosecution, or the state's need for evidence, is less than that balanced against the privacy interests in *Schmerber*. *Schmerber* was convicted of misdemeanor driving under the influence after an accident in which he and his passenger were injured. We reject the notion that this comparison to *Schmerber* reveals a basis for a departure from its holding.

The United States Supreme Court has said "[t]he reasonableness of surgical intrusions beneath the skin depends on a case-by-case approach, in which the individual's interests in privacy and security are weighed against society's interest in conducting the procedure. In a given case, the question whether the community's need for evidence outweighs the substantial privacy interests at stake is a delicate one admitting of few categorical answers." (*Winston* v. *Lee* (1985) 470 U.S. 753, 760 [84 L.Ed.2d 662, 669, 105 S.Ct. 1611].) The court in *Winston* described which factors, under *Schmerber*, determined the reasonableness of the blood test there. "A crucial factor . . . is the extent to which the procedure may threaten the safety or health of the individual." (*Id.* at p. 761 [84 L.Ed.2d at p. 669].) "Another factor is the extent of intrusion upon the individual's dignitary interests in personal privacy and bodily integrity. . . . *Schmerber* recognized society's judgment that blood tests do not constitute an unduly extensive imposition on an individual's personal privacy and bodily integrity." (*Id.* at pp. 761-762 [84 L.Ed.2d at p. 670], fn. omitted.) "Weighed against these individual interests is the community's interest in fairly and accurately determining guilt or innocence. . . . Especially given the difficulty of proving drunkenness by other means, these considerations showed that results of the blood test were of vital importance if the State were to enforce its drunken driving laws." (*Id.* at pp. 762-763 [84 L.Ed.2d at p. 670].)

The community's interest in prosecuting driving under the influence cases has increased dramatically since *Schmerber* was decided a quarter of a century ago. The Legislature has declared "that problems related to the inappropriate use of alcoholic beverages adversely affect the general welfare of the people of California. These problems, which constitute the most serious drug problem in California, include, . . . [¶] (a) [s]ubstantial fatalities, permanent disability, and property damage which result from driving

under the influence of alcoholic beverages and a drain on law enforcement, the courts, and penal system which result from crimes involving inappropriate alcohol use." (Health & Saf. Code, § 11760.) In 1981, the Legislature revised the Vehicle Code sections dealing with driving under the influence of alcohol and drugs. Among other changes, the Legislature increased the penalties for violating existing statutes and added a new statute defining an offense in terms of one's actual blood-alcohol level. In 1983 Justice Mosk eloquently described in detail the "horrific risk posed by those who drink and drive." (*Burg* v. *Municipal Court* (1983) 35 Cal.3d 257, 262 [198 Cal.Rptr. 145, 673 P.2d 732].)

As reflected by this legislative action and judicial comment, society's interest in prosecuting driving under the influence cases has increased since *Schmerber*. The state's need for evidence is greater in this case than in *Schmerber* because of the additional charge that appellant was driving with a blood-alcohol level of .08 or greater. For evidentiary value, the observations of the arresting officer cannot compare to a blood test result in such a prosecution.

Thus, upon reweighing the factors *Schmerber* deemed appropriate for our analysis, we find no reason to reach a different result.

In *Hammer* v. *Gross* (9th Cir. 1991) 932 F.2d 842, cited by appellant, a four-judge plurality upheld a jury's award of damages and considered the misdemeanor nature of a driving under the influence arrest in determining the reasonableness of the force applied to restrain a defendant while extracting a blood sample. We do not find the misdemeanor nature of this offense to make the seizure unreasonable per se. Furthermore, the facts of this case do not present the issues of whether an otherwise reasonable, nonconsensual withdrawal of blood may become unreasonable because of the amount of force exerted to obtain the sample, or the affect of the use of force on the medical risks to the arrestee.[2]

It must be remembered that the issue in this case arises in the context of an appeal from the denial of a motion to suppress. Vehicle Code section 23157, subdivision (a)(1) provides that an arrestee for driving under the influence has impliedly consented to taking his or her choice of a chemical test of his blood, breath or urine. Refusal to take a test subjects the arrestee to various penalties. The statute is clear and detailed in describing the procedures for

---

[2]We take no position on civil liability issues resulting from such tests, particularly if the arrestee is not an appropriate subject for a blood test. See, for example, Vehicle Code section 23157, subdivisions (b) and (c).

obtaining chemical tests from arrestees but contains no exclusionary provision.[3]

The order denying suppression is affirmed.

Agliano, P. J., and Cottle, J., concurred.

A petition for a rehearing was denied March 24, 1992, and appellant's petition for review by the Supreme Court was denied May 21, 1992. Panelli, J., and George, J., were of the opinion that the petition should be granted.

---

[3]Appellant and respondent both refer to a "policy" of the Monterey Police Department to obtain blood samples by force or threat of force when an arrestee refuses to choose a test. The legality of any such policy is not at issue here.