[No. C014087. Third Dist. Oct. 30, 1992.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LASSEN COUNTY, Respondent;
DAVID JOSEPH MARIA, Real Party in Interest.

COUNSEL

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, J. Robert Jibson and Janine R. Busch, Deputy Attorneys General, for Petitioner.

No appearance for Respondent.

David J. Jaquint for Real Party in Interest.

OPINION

PUGLIA, P. J.—The People petition for an extraordinary writ seeking relief from a judgment of respondent Lassen County Superior Court granting the petition of real party in interest David Joseph Maria for a writ of mandate. The writ ordered the Lassen County Justice Court to dismiss a count of a criminal complaint alleging a violation of Vehicle Code section 23152, subdivision (a) (driving under the influence of alcohol, drugs, or both). The superior court ordered the charge dismissed because it found the police had not afforded Maria the opportunity to take the chemical test of his choice, pursuant to Vehicle Code section 23157, and thus deprived him of the right to obtain exculpatory evidence.

In this proceeding, the People contend the superior court erroneously interpreted Vehicle Code section 23157 to require dismissal of criminal charges if law enforcement officials fail to offer a suspected drunk driver the chemical test of his choice. The People also contend that Maria was unable to demonstrate constitutional error warranting dismissal of the charge. We shall conclude these contentions have merit and shall order a writ of mandate to issue directing the superior court to vacate its judgment granting Maria's writ petition and to enter judgment denying the petition.

Maria was charged in Lassen County Justice Court in a three-count complaint. Count I alleged that on September 28, 1991, Maria drove a motor vehicle under the influence of alcohol, a drug, or both. (Veh. Code, § 23152, subd. (a).) Count I also alleged a violation of Vehicle Code section 23159 in that Maria refused a peace officer's request to submit to, or willfully failed to complete, a chemical test. Count I further averred that within seven years

of September 28, 1991, Maria had suffered a prior conviction for a violation of Vehicle Code section 23152, subdivision (a), as well as a prior conviction for a violation of Vehicle Code section 23103.

Count II of the complaint alleged that on the date set forth above Maria drove a motor vehicle with a blood-alcohol level equal to or greater than .08 percent. (Veh. Code, § 23152, subd. (b).) Count II also alleged the same prior convictions alleged in count I.

Count III alleged that on the date set forth above Maria drove a motor vehicle at a time when he knew his driver's license was suspended and revoked for a violation of Vehicle Code section 23152. (Veh. Code, § 14601.2, subd. (a).)

Undisputed evidence supporting these charges revealed that police stopped Maria for driving under the influence shortly after midnight on September 28, 1991. After field sobriety tests were administered Maria was arrested for driving under the influence and transported to the county jail in Susanville. Maria was informed that he had the choice of taking a blood, breath, or urine test. Maria requested the urine test. Maria was informed that the jail's supply of specimen bottles was exhausted and that he could take one of the remaining two tests. Maria refused and again requested a urine test without success. Maria did not submit to either a blood or breath test. Thereafter the criminal complaint was filed containing the charges set forth above.

Maria moved to dismiss counts I and II of the complaint. He argued that the police failed to perform the chemical test he requested pursuant to Vehicle Code section 23157, subdivision (d). He also contended that the police unilaterally restricted his chemical test choices.

The justice court granted the motion in part. As to count I, the court ordered that all allegations based on Maria's refusal to submit to a chemical test be stricken. The court also dismissed, in its entirety, count II, which charged excessive blood-alcohol level. The court denied without prejudice the motion to dismiss the remaining allegations of count I charging a violation of Vehicle Code section 23152, subdivision (a), driving under the influence. No action was taken with respect to count III charging driving with a suspended license.

Maria then filed in respondent superior court a petition for a writ of mandate to compel dismissal of count I. In addition to the facts set forth above, evidence was adduced regarding the unavailability of specimen bottles needed to complete the urine test. The evidence showed that the local

hospital had a supply of specimen bottles but that the bottles did not contain a preservative meeting Department of Justice requirements. The California Highway Patrol (CHP) may have had a supply of specimen bottles with the required preservative, but the local CHP office was closed at the time of Maria's arrest. The CHP dispatcher, though, would have answered a telephone call from local police. The dispatcher, in response to a request for a specimen bottle, would have telephoned the on-call CHP officer at home. The on-call officer would have driven to the CHP office to obtain a bottle and then driven to the jail, unless the officer happened to have had a bottle in his patrol vehicle, in which case the officer would have proceeded directly to the jail. The evidence also disclosed that the Susanville police did not attempt to contact either the hospital or CHP after Maria's arrest.

The superior court found that law enforcement officials had deprived Maria of an opportunity to obtain exculpatory evidence by failing to maintain an adequate supply of specimen bottles at the jail and also by failing to inquire whether the bottles were available from the hospital or CHP. Consequently, the court issued a writ ordering that count I be dismissed.

The People filed a notice of appeal from this judgment, but the appeal was dismissed after the People neglected to designate the record on time. Thereafter the People filed the instant petition.

I

Maria raises two procedural objections to the People's petition. The first is that the People have failed to establish that the remedy at law is inadequate. The second is that the petition is untimely.

■ Maria argues the People had an adequate remedy at law by appeal from the superior court judgment granting his petition. Since appeal is generally considered an adequate remedy, and the People noticed but voluntarily abandoned an appeal, Maria argues extraordinary writ relief will not lie. We reject this argument. The People's petition is authorized by Code of Civil Procedure section 904.1, subdivision (a), which provides that a superior court judgment granting or denying a petition for a writ of mandamus or prohibition directed to a justice court is not appealable, but may be reviewed by a petition for extraordinary writ. (*Heldt* v. *Municipal Court* (1985) 163 Cal.App.3d 532, 534, fn. 1 [209 Cal.Rptr. 579].) Since the superior court judgment is nonappealable, the People do not have any remedy, much less an adequate remedy, by way of appeal and the dismissal of the People's "appeal" is irrelevant.

■ Maria's second procedural objection is that the People's petition is untimely under California Rules of Court, rules 66 and 107. These rules

relate to the appellate department of the superior court and specify that judgments of that department become final upon the expiration of 15 days from the date of filing unless a petition for rehearing is filed. The cited rules are inapposite as the appellate department of the superior court was not involved in this matter. The People's petition was filed on August 13, 1992, which is less than 30 days after July 16, 1992, when the superior court judgment in Maria's favor was filed. Therefore the People's petition is timely filed in this court. (*Popelka, Allard, McCowan & Jones* v. *Superior Court* (1980) 107 Cal.App.3d 496, 500 [165 Cal.Rptr. 748] [writ petition in court of appeal generally considered timely if filed within 60 days of challenged order].)

We now proceed to the merits.

## II

The People argue that the court erroneously interpreted the implied consent law to require a police officer to offer a suspect a choice of all three chemical tests and to administer the one requested on pain of dismissal of the charges for failure to do so. The People also argue that even if Maria established a case of suppression of evidence or failure to obtain evidence by law enforcement officials, he failed to demonstrate constitutional error requiring dismissal of the charges under the tests set forth in *California* v. *Trombetta* (1984) 467 U.S. 479 [81 L.Ed.2d 413, 104 S.Ct. 2528], and *Arizona* v. *Youngblood* (1988) 488 U.S. 51 [102 L.Ed.2d 281, 109 S.Ct. 333].

We consider the constitutional claim first. The superior court, in its written order on the petition, relied on the case of *In re Newbern* (1961) 55 Cal.2d 508 [11 Cal.Rptr. 551, 360 P.2d 471] to support the remedy of dismissal. In *Newbern*, the Supreme Court stated that it would be a denial of due process for law enforcement authorities to frustrate the reasonable efforts of a person accused of intoxication to obtain a timely sample of his blood, and that the remedy therefor would be discharge. (55 Cal.2d at p. 513, citing *In re Newbern* (1959) 175 Cal.App.2d 862, 864, 866 [1 Cal.Rptr. 80, 78 A.L.R.2d 901]; accord *In re Martin* (1962) 58 Cal.2d 509, 512 [24 Cal.Rptr. 833, 374 P.2d 801].)

In relying on the rule stated in *Newbern*, the superior court distinguished a case cited by the People, *Brown* v. *Municipal Court* (1978) 86 Cal.App.3d 357, 363 [150 Cal.Rptr. 216]. In *Brown*, the police gave a suspected drunken driver a breath test but refused his request for a blood test at his own expense. The driver was charged with driving under the influence and the municipal court denied the driver's motion to dismiss the charge. The driver

petitioned for writ of mandate in superior court. The superior court granted the petition and ordered the charge dismissed. The People appealed and the judgment was reversed. The court noted that the remedy of dismissal had been approved in the *Newbern* and *Martin* cases, but that the rule stated in those cases had been overtaken by *People v. Hitch* (1974) 12 Cal.3d 641 [117 Cal.Rptr. 9, 527 P.2d 361], which held that due process is satisfied by exclusion of the results of the chemical test that the defendant is unable to challenge. (*Brown, supra,* 86 Cal.App.3d 357, 363-364.) Therefore, the Court of Appeal held that the appropriate remedy for failure to make available the requested blood test was suppression of evidence of the breath test rather than dismissal of the charge.

Respondent superior court distinguished *Brown* on the ground that Maria's request for a urine test was designed to produce evidence that might have been helpful to his defense, whereas in *Brown* the requested blood test was intended to impeach the results of the breath test that had already been administered. Respondent court found that the failure to provide a urine test was more than the denial of Maria's right to obtain impeachment evidence; rather, the failure amounted to a denial to the defense of probative evidence so as to warrant the draconian remedy of dismissal sanctioned in *Newbern*.

While the logic employed by respondent court was impeccable, its reliance on *Newbern* was not. As the court of appeal in *Brown* observed, the rule stated in *Newbern* has been substantially limited by *Hitch, supra,* 12 Cal.3d 641. *Hitch* involved the intentional but good-faith destruction by police of possible impeachment evidence for the defense, namely, a breathalyzer test ampoule. The *Hitch* court held that where such potentially impeaching evidence is destroyed, due process does not require dismissal of the action, but only exclusion of the prosecution's evidence which might have been impeached by the destroyed evidence. (12 Cal.3d 641, 652-653.) The court added, in a footnote, that dismissal remained a viable remedy, but only in those cases where the evidence was destroyed in bad faith, which would give rise to an inference the evidence could have established innocence. (*Id.* at p. 653, fn. 7.)

There was no express finding of bad faith in the present case nor is such a finding implicit in the court's order granting the petition. To the contrary, it is clear that the police offered Maria a breath test or blood test and that they were merely negligent in failing to maintain an adequate supply of urine specimen bottles at the jail or to resort to alternative sources on the occasion in question. Under *Hitch*, dismissal is precluded in the absence of bad faith regardless of whether the suppressed evidence is impeachment evidence or direct evidence. Consequently, respondent court's reliance on the *Newbern* case was misplaced.

Our conclusion is further buttressed by developments since *Hitch* was decided. Recently, in *People* v. *Cooper* (1991) 53 Cal.3d 771 [281 Cal.Rptr. 90, 809 P.2d 865], the court recognized that *Hitch* states too broad a rule. The court explained: "The applicable law [regarding suppression of defense evidence claims] is no longer found in *Hitch, supra,* 12 Cal.3d 641, but in two subsequent United States Supreme Court decisions. ▮ In *California* v. *Trombetta* (1984) 467 U.S. 479, 488-489 . . . , the high court held: 'Whatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality [citation], evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.' (Fn. omitted.) [¶] More recently, in *Arizona* v. *Youngblood* (1988) 488 U.S. 51, 58 . . . , the court held that 'unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.' " (*People* v. *Cooper, supra,* 53 Cal.3d 771, 810.)

▮ Application of these controlling tests to the instant facts confirms that Maria's due process claim is devoid of merit. Maria failed to establish that the evidence he sought to obtain, namely, a chemical analysis of his blood, was unavailable through reasonable alternatives. The police offered Maria his choice of a blood test or a breath test, yet he declined these offers. Maria's conduct belies his claim that law enforcement officials intentionally frustrated his quest for exculpatory evidence. Maria's decision to decline a breath or blood test also gives rise to the inference that the results of either of these tests would not have assisted his defense. Indeed, from all that appears in the record, there is nothing to suggest that Maria was other than visibly intoxicated. In these circumstances we doubt whether the urine test Maria requested would have proven anything other than his intoxication. Where the claimed exculpatory evidence could not have been expected to help the defense, there is no due process violation. (*Trombetta* v. *California, supra,* 467 U.S. 479, 488-489 [81 L.Ed.2d at pp. 421-422].) Finally, Maria's constitutional claims also collapse since, as noted above, there was no bad faith misconduct on the part of law enforcement officials herein. (*Arizona* v. *Youngblood, supra,* 488 U.S. 51, 58 [102 L.Ed.2d at p. 289].)

III

The remaining argument put forth by the People is that the trial court misinterpreted the implied consent law so as to require dismissal of criminal

charges if law enforcement officials fail to offer a suspected drunken driver the chemical test of his choice.

It does not appear that respondent court based its ruling strictly on a violation of the implied consent law. Nor does the court's ruling suggest that dismissal is the only appropriate remedy for violation of a suspect's right to undergo the chemical test of his choice. Instead, it appears the court rested its holding on a due process violation of Maria's right to obtain exculpatory evidence. As we have explained, however, the court's judgment cannot be sustained on that basis.

■ The People, though, implicitly recognizing the rule that judgments correct in law will be affirmed even if given for the wrong reason, propose that the instant judgment cannot rest on the negligent failure of law enforcement officials to administer to a suspected drunken driver the chemical test of his choice. Conversely, Maria argues that the mandatory language of Vehicle Code section 23157 compels dismissal of criminal charges where the police fail to administer the chemical test chosen by a suspected drunken driver. In Maria's view, section 23157 imposes a mandatory duty on police to offer a suspect a choice of all three chemical tests; dismissal is an available remedy for a violation thereof; respondent court exercised its discretion in imposing such a sanction herein; the judgment should not be disturbed absent a manifest abuse of discretion; and there was no abuse of discretion here.

Vehicle Code section 23157, subdivision (d), upon which Maria relies, provides: "A person lawfully arrested for any offense allegedly committed while the person was driving a motor vehicle in violation of Section 23152 or 23153 may request the arresting officer to have a chemical test made of the arrested person's blood, breath or urine for the purpose of determining the alcoholic content of that person's blood, and, if so requested, the arresting officer shall have the test performed."

As support for his argument that dismissal of criminal charges is an appropriate remedy for a violation of this statute, Maria relies on the words of the statute itself, which provides that the "arresting officer *shall* have the test performed." (Italics added.) Maria proposes that the use of the word "shall" connotes a mandatory duty, and that a violation of that duty requires dismissal.

While we acknowledge that the word "shall" generally connotes a mandatory duty, we are not constrained to accept the further premise that dismissal is an appropriate remedy for violation of such a duty. Vehicle Code

section 23157 itself is silent regarding a remedy for a violation thereof. Cases construing this section and its predecessor, former Vehicle Code section 13353, have uniformly observed that the section was enacted (1) to secure the best evidence of blood-alcohol content at the time of a suspected drunken driver's arrest in as noncoercive a manner as possible; (2) to impose administrative discipline on those suspects who fail to comply; and (3) to increase public safety on roadways. (*People* v. *Fite* (1968) 267 Cal.App.2d 685, 690 [73 Cal.Rptr. 666]; *People* v. *Brannon* (1973) 32 Cal.App.3d 971, 974 [108 Cal.Rptr. 620]; *People* v. *Puccinelli* (1976) 63 Cal.App.3d 742, 745-746 [135 Cal.Rptr. 534]; *People* v. *Ryan* (1981) 116 Cal.App.3d 168, 182 [171 Cal.Rptr. 854]; *People* v. *Trotman* (1989) 214 Cal.App.3d 430, 437, fn. 6 [262 Cal.Rptr. 640].) These cases have also consistently declined to sanction the remedy of dismissal of criminal charges in the absence of a constitutional violation, since dismissal would not advance the statute's purposes. In light of these cases and the absence of a statutory sanction for police noncompliance, we decline to approve the remedy of dismissal of criminal charges on the present facts. It follows that respondent court erred in granting Maria's petition.

## IV

Let a peremptory writ of mandate issue directing respondent court to vacate the judgment granting Maria's petition for writ of mandate, and to enter judgment denying said petition.

Davis, J., and Scotland, J., concurred.