**STATE of Alaska, Petitioner,**

v.

**Gregory SIMPSON, Respondent.**

No. A–8367.

Court of Appeals of Alaska.

April 25, 2003.

Rehearing Denied July 31, 2003.

W.H. Hawley, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Petitioner.

Frederick T. Slone, Kasmar and Slone, P.C., Anchorage, for Respondent.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

### OPINION

COATS, Chief Judge.

Under the due process clause of the Alaska Constitution, a person arrested for driving while intoxicated is entitled to an independent test of his blood alcohol level. The State charged Gregory Simpson with felony driving while intoxicated (DWI) based in part upon two prior California convictions for diving while intoxicated. Simpson moved to suppress the State's use of his prior California convictions on the ground that those convictions were constitutionally suspect under Alaska law because his right to an independent test was not constitutionally protected in California. Superior Court Judge Stephanie E. Joannides agreed with Simpson and granted his motion. The State filed a petition for review. We granted the petition. We reverse Judge Joannides's decision and conclude that Simpson's prior California convictions are admissible to support the felony DWI charge.

Normally driving while intoxicated is a class A misdemeanor.[1] But the State can charge the person with a class C felony if the person has two or more prior convictions "since January 1, 1996, and within the 10 years preceeding the date of the present offense."[2] Judge Joannides's ruling prevented the State from using Simpson's two prior California convictions to charge Simpson with a felony.

In reaching her decision to not allow the State to use Simpson's prior convictions to support a felony driving while intoxicated charge, Judge Joannides relied on two cases where we held that some prior convictions were too unreliable to enhance a defendant's sentence. In *Pananen v. State*,[3] we addressed a prior conviction where the defendant had not been afforded a right to counsel. In *Pananen*, the defendant was convicted of two counts of driving while intoxicated.[4] The trial court sentenced the defendant as a third offender because he had two prior convictions for that offense in Wisconsin.[5] On appeal, the defendant argued that the first of the two Wisconsin convictions was invalid to enhance his sentence because, under Wisconsin law, he was not afforded the right to be represented by counsel.[6] We concluded "that an uncounseled conviction is simply too unreliable to be depended on for purposes of imposing a sentence of incarceration, whether that sentence is imposed directly or collaterally."[7] Based on this conclusion, we held that "[b]ecause Wisconsin law did not extend to Pananen the right to court-appointed counsel for his first DWI offense, Pananen's first Wisconsin conviction should not have been relied upon by the district court as a basis for determining the applicable mandatory minimum sentence."[8]

In *State v. Peel*,[9] we addressed whether a prior driving while intoxicated conviction could be used to support a mandatory minimum sentence for driving while intoxicated where the defendant had been denied the right to a jury trial. In *Peel*, the trial court concluded that it would not use the defendant's prior Louisiana conviction for driving while intoxicated to impose a mandatory minimum sentence required by law for second driving while intoxicated offenders.[10] The trial court relied on the fact that, under

---

1. AS 28.35.030(b).

2. AS 28.35.030(n). Simpson was charged under former AS 28.35.030 but changes to the statute are not relevant to this appeal.

3. 711 P.2d 528 (Alaska App.1985).

4. *Id.* at 529.

5. *Id.*

6. *Id.* at 530 ("Under Wisconsin law, a first-offense DWI is treated as a civil forfeiture, not as a crime. The offense is not punishable by impris-

onment.... Accordingly, an indigent person charged with a first-offense DWI in Wisconsin is not entitled to court-appointed counsel.").

7. *Id.* at 532.

8. *Id.*

9. 843 P.2d 1249 (Alaska App.1992).

10. *Id.* at 1250.

Louisiana law, Peel had not been entitled to a trial by jury for his prior offense.[11] The State challenged the trial court's ruling, distinguishing *Pananen* by arguing that the right to a jury trial was not as critical as the right to counsel.[12] We relied on Alaska decisions that equated the right to counsel and the right to a jury trial and upheld the trial court's decision to not use the prior Louisiana driving while intoxicated conviction to apply the mandatory minimum sentencing provisions.[13]

Using the logic of these two decisions, Judge Joannides concluded that Simpson's two prior California convictions could not be used to support enhancing Simpson's offense from a misdemeanor to a felony. She held that because California did not mandate that a defendant was entitled to an independent test of his blood alcohol level, Simpson's prior convictions, like the prior convictions we disallowed in *Pananen* and *Peel,* were constitutionally suspect. The State petitioned, arguing that the right to an independent test is not the equivalent to the right to counsel or the right to a jury trial.

In order to understand the nature of the right to an independent test in Alaska, it is helpful to explore the history of the development of that right. The Alaska Supreme Court first recognized a due process right to challenge the result of a police-administered breath test in *Lauderdale v. State.*[14] In *Lauderdale,* the court held that in order to introduce the result of a police administered breath test at trial, the State had to give the defendant a reasonable opportunity to challenge the breath test result.[15] The court required the State to preserve ampoules that were part of the breath test procedure so that the defendant could independently test the ampoules to potentially attack the breath test result.[16]

In *Anchorage v. Serrano,*[17] this court was asked to determine whether, under the logic of *Lauderdale,* the State should be required to preserve a breath sample so that a person charged with driving while intoxicated could have the breath sample independently examined to challenge the result of a State administered breath test. Relying on *Lauderdale,* we concluded that "due process ... [requires] the prosecution to make reasonable efforts to preserve a breath sample in those cases in which they wish to admit the result of a breath test."[18] But we concluded that the State was not limited to preserving a breath sample to allow the defendant to challenge a breath test result. We pointed out that the State could "take other steps" to allow a defendant to determine the accuracy of the breath test.[19] We suggested that the defendant could be informed of his right to secure an independent test and, if he requested an independent test, could be allowed or assisted to obtain that test.[20]

The Alaska Supreme Court has continued to expand and protect the right to an independent test. The court has explained that "[a] positive Intoximeter test result is the single most important piece of evidence against a defendant accused of driving while intoxicated" and concluded that "[s]ince a defendant must provide the state with potentially incriminating evidence at the risk of criminal penalties, ... the defendant [must] be given an opportunity to challenge the reliability of that evidence in the simplest and most effective way possible, that is, an independent test."[21] The State has met its obligation to provide defendants with the

---

**11.** *Id.* ("[U]nder Louisiana law, defendants who were charged with criminal offenses which carry a penalty of no more than six months in jail cannot obtain a jury trial. DWI is such an offense in Louisiana, and [the defendant] therefore had no right to a jury trial.").

**12.** *Id.* at 1250–51.

**13.** *Id.* at 1251.

**14.** 548 P.2d 376 (Alaska 1976).

**15.** *Id.* at 381–82.

**16.** *Id.* at 382.

**17.** 649 P.2d 256 (Alaska App.1982).

**18.** *Id.* at 260.

**19.** *Id.* at 258.

**20.** *Id.* at 258 n. 5.

**21.** *Gundersen v. Anchorage,* 792 P.2d 673, 675–76 (Alaska 1990).

right to challenge their breath test results by providing them with the opportunity to take an independent blood test.[22]

Other courts have generally reached a different result. In *California v. Trombetta*,[23] the United States Supreme Court held that "the Due Process Clause of the Fourteenth Amendment does not require that law enforcement agencies preserve breath samples in order to introduce the results of breath-analysis tests at trial."[24] Since the United States Supreme Court's decision in *Trombetta*, most states have concluded that a defendant does not have a right to an independent test under the due process clauses of their respective state constitutions.[25] Few, if any, states protect the right to an independent chemical test to the extent that Alaska does.[26]

The constitutional right to an independent chemical test is a firmly established and important right in Alaska. But, as important as this right is, we do not believe that criminal proceedings in states that do not recognize this right can be equated to criminal proceedings in which the defendant has no right to counsel or no right to a jury trial. When a defendant has been denied the right to counsel or the right to trial by jury, the trial process itself is fundamentally flawed. But the right to an independent chemical test is not so crucial a right.

This distinction is illustrated in our decision in *Serrano*, where we held that the supreme court's *Lauderdale* decision required the State to offer a defendant the right to an independent chemical test. In *Serrano*, we declared that law enforcement officials could satisfy their burden to provide the defendant with an independent chemical test if they made "reasonable efforts to preserve a breath sample or to take other steps to allow a defendant to verify their results of the [breath] test."[27] That is, the rule we announced in *Serrano* was limited by practicality: the State suffers adverse consequences for failing to afford a defendant the opportunity to obtain an independent chemical test only if the police fail to make reasonable efforts to offer the independent test.

More recently in *Snyder v. State*,[28] the Alaska Supreme Court reiterated this doctrine of reasonable efforts. The court compared the police department's duty to offer defendants an independent chemical test to the requirement announced in *Stephan v. State*[29] that the police electronically record custodial interrogations.[30] The supreme court stated:

> As long as it is not impracticable for the police to take a defendant to a facility where he or she can obtain an independent test, this potentially exculpatory evidence cannot be denied a defendant. However, if

**22.** *Snyder v. State*, 930 P.2d 1274, 1277 (Alaska 1996) (extending the right to an independent chemical test even if the defendant had refused to take the statutorily prescribed breath test); *Gundersen*, 792 P.2d at 675–78 (holding that the police could satisfy a defendant's due process right to an independent test by informing the defendant of his right to an independent test and assisting him to obtain the test); *Champion v. State, Dep't of Pub. Safety*, 721 P.2d 131, 132–33 (Alaska 1986) (extending the right to an independent test to license revocation proceedings).

**23.** 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

**24.** *Id.* at 491, 104 S.Ct. at 2535.

**25.** *See, e.g., People v. Trombetta*, 173 Cal.App.3d 1093, 1100, 219 Cal.Rptr. 637 (Cal.App.1985); *Havens v. Charnes*, 738 P.2d 1202, 1204 (Colo. App.1987); *State v. Vernon*, 218 Neb. 539, 356 N.W.2d 887, 889–90 (1984); *Montoya v. Metro. Court*, 98 N.M. 616, 651 P.2d 1260, 1261 (1982), *rev'd on other grounds, State v. Alberico*, 116 N.M.

156, 861 P.2d 192 (1993); *Commonwealth v. Gamber*, 352 Pa.Super. 36, 506 A.2d 1324, 1327 (1986); *State v. Williams*, 480 A.2d 1383, 1390 (R.I.1984); *State v. Sandler*, 175 W.Va. 572, 336 S.E.2d 535, 538 (1985).

**26.** *See, e.g., Snyder*, 930 P.2d at 1282 n. 3 (Eastaugh, J., dissenting); John P. Ludington, Annotation, *Drunk Driving: Motorist's Right to Private Sobriety Test*, 45 A.L.R.4th 11, 1986 WL 361638 (1986) (discussing the various states' extension of statutory and constitutional protections to independent tests); Flem Whited, III, *Independent Test*, 1 Drinking/Driving Litigation: Criminal and Civil § 11:19 (2002) (same).

**27.** *Serrano*, 649 P.2d at 258.

**28.** 930 P.2d 1274, 1278 (Alaska 1996).

**29.** 711 P.2d 1156 (Alaska 1985).

**30.** *Snyder*, 930 P.2d at 1278.

obtaining an independent test is impracticable or exceedingly burdensome, as may be the case, for example, if the accused is arrested in a community without the capability of providing a blood test, no test would be constitutionally required.[31]

 Thus, even in Alaska, a defendant charged with driving while intoxicated is not always entitled to an independent chemical test. If it is "impracticable or exceedingly burdensome" to obtain an independent chemical test, then the test is not required. Under such circumstances, a defendant may properly be convicted of the offense even though there is no independent chemical test. Moreover, if the defendant were ever again prosecuted for driving while intoxicated, this conviction would qualify as a prior conviction for purposes of enhancing the defendant's sentence or supporting a charge of felony driving while intoxicated.

 All of this demonstrates the very real difference, from a due process standpoint, between criminal proceedings where the defendant had no opportunity to obtain an independent chemical test and criminal proceedings where the defendant had no right to counsel or no right to a jury trial. It is obvious that our supreme court would never excuse the failure to provide a defendant with legal counsel or the failure to grant the defendant a jury trial on the ground that it was "impracticable or exceedingly burdensome" to do so.

One other aspect of our *Serrano* decision offers insight regarding the nature of a defendant's right to an independent chemical test. When we decided *Serrano*, we also had to decide whether to apply our decision retroactively. We concluded that the right to an independent chemical test "should be applied mainly prospectively, since there has been considerable reasonable reliance on the prior standard of law by law enforcement officials." [32] In contrast, when the United States Supreme Court decided *Gideon v. Wainwright*,[33] extending the right to counsel in criminal prosecutions to indigent state defendants under the Fourteenth Amendment, the Supreme Court made its decision retroactive.[34] If we had concluded that the lack of an independent chemical test rendered any resulting conviction fundamentally unfair, we likewise would have made *Serrano* retroactive.

We accordingly conclude that, even though the Alaska due process clause normally guarantees the right to an independent chemical test, the failure of another state to provide an equivalent guarantee does not bar the use of prior convictions from that state in Alaska prosecutions for driving while intoxicated— either to establish the applicable mandatory minimum sentence or to establish the predicate prior convictions for a charge of felony driving while intoxicated.

The decision of the superior court is REVERSED.

MANNHEIMER, Judge, dissenting.

This case raises the issue of whether a defendant's prior DWI conviction from another state qualifies as a "prior conviction" under AS 28.35.030(r)(4) if that other state does not recognize a motorist's right to an independent chemical test of their breath or blood. Simpson has prior DWI convictions from California. California statutory law gives motorists the right to choose a blood test (presumably, an independent chemical test) instead of a breath test: *see* California Vehicle Code § 23612(a)(2)(A).[1] However,

**31.** *Id.*

**32.** *Serrano,* 649 P.2d at 260.

**33.** 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

**34.** *See Johnson v. New Jersey,* 384 U.S. 719, 727–28, 86 S.Ct. 1772, 1778, 16 L.Ed.2d 882 (1966) (recognizing and defending the retroactive application of *Gideon* ); *Gideon v. Wainwright,* 153 So.2d 299, 300 (Fla.1963) (outlining the procedure adopted by the Florida court system to handle the anticipated future appeals arising from the Supreme Court's *Gideon* decision).

**1.** California Vehicle Code § 23612(a)(1)(A) reads:

If the person is lawfully arrested for driving under the influence of an alcoholic beverage, the person has the choice of whether the test shall be of his or her blood or breath, and the officer shall advise the person that he or she has that choice. If the person arrested is either incapable, or states that he or she is incapable, of completing the chosen test, the

the California courts have repeatedly held that this statutory right is not a due process right, and that failure to advise a motorist of their right to choose a blood test does not invalidate the motorist's conviction or require suppression of breath test results.[2]

In our original decision, *State v. Simpson*, Alaska App. Opinion No. 1869 (April 25, 2003), we concluded that even when other states do not give motorists the right to an independent test, convictions from these states still qualify as "prior convictions". We acknowledged that a motorist's right to an independent test is a component of the due process of law guaranteed by Article I, Section 7 of the Alaska Constitution. See *Gundersen v. Anchorage*, 792 P.2d 673, 676–77 & n. 6 (Alaska 1990). We further acknowledged that DWI convictions from other states do not qualify as "prior convictions" if those states do not guarantee motorists the right to counsel or the right to trial by jury. See *Pananen v. State*, 711 P.2d 528 (Alaska App. 1985) (right to counsel), and *State v. Peel*, 843 P.2d 1249 (Alaska App. 1992) (right to jury trial). Nevertheless, we concluded

that the due process right to an independent chemical test is not as fundamental as the due process rights to counsel and trial by jury. See *Simpson*, opinion at p. 599.

After considering Simpson's petition for rehearing, I am no longer firmly convinced that this analysis is correct. I also question whether, after our supreme court has declared that a particular right is so fundamental that it is guaranteed by the due process clause, this Court is then authorized to declare that this same right is not as fundamental as other fundamental rights.

For these reasons, I would grant the petition for rehearing and order further briefing on the questions raised in the petition.

---

person shall submit to the remaining test. If a blood or breath test, or both, are unavailable, then paragraph (2) of the subdivision (d) applies.

(§ 23612(d)(2) reads: "If a blood or breath test is not available ..., the person shall submit to the remaining test in order to determine the percent, by weight, of alcohol in the person's blood. If both the blood and breath tests are unavailable, the person shall be deemed to have given his or her consent to chemical testing of his or her urine and shall submit to a urine test.")

**2.** See *People v. Superior Court (ex rel. Maria)*, 13 Cal.Rptr.2d 741, 11 Cal.App.4th 134 (Cal.App. (3rd Dist.) 1992) (a police officer's failure to offer a suspected drunk driver the chemical test of his choice does not require dismissal of the charges); *Skinner v. Sillas* 130 Cal.Rptr. 91, 58 Cal.App.3d 591 (Cal.App. (2nd Dist.) 1976) (a motorist has no right to be told of all possible chemical tests, so long as he is told of one potential test and he thereafter takes the chemical test of which he was informed); *People v. Brannon*, 108 Cal.Rptr. 620, 32 Cal.App.3d 971 (Cal.App. (5th Dist.)

1973) (even though the police officer violated the portion of the implied consent statute that requires arresting officers to inform motorists that they have the choice of taking a breath, blood, or urine test, the motorist's choice of tests does not involve any constitutionally protected interest; thus, even though the motorist was offered only a breath test, the failure to advise the motorist of the other choices does not require suppression of the results of the breath test).

See also *Nelson v. City of Irvine*, 143 F.3d 1196 (9th Cir. 1998), *cert. denied* 525 U.S. 981, 119 S.Ct. 444, 142 L.Ed.2d 399 (holding that police officers did not violate the Fourth Amendment when they failed to inform suspects arrested for driving under the influence (DUI) of their choice of alcohol tests, pursuant to California's implied consent statute. The court reasoned that suspects do not have to be advised of their Fourth Amendment rights, much less their statutory rights. Therefore, the Fourth Amendment did not require police officers to advise DUI suspects of their right to choose among breath, blood, or urine tests, even though the California statute required that arrestees be informed of these options.)